UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| J.T. for T.T., <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK DEPARTMENT OF EDUCATION, <br><br> Defendant. | **MEMORANDUM AND ORDER** <br><br> 19-CV-3403 (LDH) (LB) |
| JERRY GEZA TOTH individually and on behalf of T.T., <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK DEPARTMENT OF EDUCATION, <br><br> Defendant. | 19-CV-3821 (LDH) (LB) |

LASHANN DEARCY HALL, United States District Judge:

Plaintiff Jerry Toth, individually and on behalf his son, T.T., proceeding pro se,[1] asserts claims across two complaints (*Toth II* and *Toth III*) against Defendant the New York City Department of Education (the "NYC DOE") pursuant to 42 U.S.C. § 1983; the Individuals with

---

[1] In *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, the Second Circuit held that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." 906 F.2d 59, 61 (2d Cir. 1990) ("The choice to appear *pro se* is not a true choice for minors who under state law cannot determine their own legal actions. There is thus no individual choice to proceed *pro se* for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.") (internal citation omitted). Though Plaintiff proceeds pro se on behalf of his minor child, he is an attorney. (*See* 19-cv-3821, ECF No. 1-1.) (identifying Plaintiff as Jerry Toth, attorney of Law Office of J.G. Toth). Thus, pro se Plaintiff has not run afoul of the prohibition articulated in *Cheung*. That said, when the plaintiff is proceeding pro se, the Court must typically "construe liberally" his complaint and any further pleadings, and "interpret them to raise the strongest arguments that they suggest." *Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282, 286 (2d Cir. 2010) (internal quotations and citation omitted). Because Plaintiff is an attorney, the Court treats him as an attorney, not a pro se litigant. *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 315 (S.D.N.Y. 2015) (collecting cases), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *see also Larsen v. JBC Legal Grp., P.C.*, 533 F.Supp.2d 290, 295 n.2 (E.D.N.Y. 2008) ("[T]he rules afforded pro se litigants are not relaxed when that litigant is also an attorney").

Disabilities Education Act (the "IDEA"); and Section 504 of the Rehabilitation Act of 1974 (the "Rehabilitation Act") alleging deprivation of a free and appropriate public education ("FAPE"). Plaintiff moves for reconsideration of and to vacate the Court's order in *Toth II*, which denied his request for a temporary restraining order ("TRO") requiring the NYC DOE to approve T.T's placement at a private school of Plaintiff's choice. Plaintiff also moves pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction to enforce the Court's order requiring the NYC DOE to maintain T.T's 20 hours per week of 1:1 home-based Special Education Teacher Support Services ("SETSS") during the pendency of administrative proceedings. Plaintiff moves for judgment as a matter of law on this same basis. Defendant moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint in *Toth III* for lack of subject-matter jurisdiction.

## BACKGROUND

T.T. is an 11-year old boy who was diagnosed in 2010 with autism. (*Toth III* Compl. ¶¶ 1, 3, 33, 19-cv-3821, ECF No. 1.) As a result of his autism, T.T. suffers significant deficits and interfering behaviors including, but not limited to, a speaking handicap. (*Id.* ¶ 3.) T.T.'s autism also prevents him from learning in a classroom setting absent 1:1 instruction. (*Id.* ¶¶ 35–36.) With 1:1 instruction, T.T. can study regular education material. (*Id.* ¶ 39.) From June 2010, to August 2011, T.T. was provided 20 hours per week of home-based 1:1 Applied Behavioral Analysis ("ABA") therapy. (*Id.* ¶ 34.)

T.T. continued to receive home-based 1:1 instruction until he entered the NYC DOE school system. (*Id.* ¶ 74.) According to Plaintiff, for seven years, "[the NYC DOE] has either issued [Individualized Education Plans ("IEP")] omitting substantial 1:1 instruction or issued no IEP at all." (*Id.* ¶ 10.) From September 6, 2012, to June 30, 2015, T.T. attended PS 993—a

2

special education school in District 75. (*Id*. ¶ 42.) Throughout this time, T.T. was placed in an educational setting in which he did not learn. (*See id*.) In July 2015, T.T. began schooling at the Association in Manhattan for Autistic Children (the "AMAC"). (*Id*. ¶ 50.) At the AMAC, T.T was placed in a classroom with students who, like T.T., suffered speaking handicaps. (*Id*. ¶¶ 50, 57.)

Between 2011, and 2018, T.T.'s parents filed nine due process complaints with the NYC DOE challenging T.T's IEPs. (*Id*. ¶ 17.) By Stipulation of Settlement dated February 9, 2018, ("the 2018 Agreement"), the parties settled a due process complaint challenging T.T.'s IEP for the 2017–2018 school year. (Aug. 15, 2018 Decl. Agnetha Jacob ("Jacob Decl.") ¶ 21, 18-cv-4180, ECF No. 13.) The 2018 Agreement provided T.T. with 90 minutes per week of 1:1 speech services for the remainder of the 2017–2018 school year and reimbursement for $6,600 for speech services at Kumon Learning Center ("Kumon") and $3,600 of tutoring services, and authorized 20 hours per week of 1:1 home-based SETSS. (*Id*. Ex. D at 1–4, ECF No. 13-4.)

On July 26, 2018, Plaintiff commenced the first of three federal actions related to T.T.'s educational placement—*Toth I*. (*See Toth I* Compl., 18-cv-04180, ECF No. 1.) In *Toth I*, Plaintiff sought an order pursuant to 20 U.S.C. § 1415(j) requiring the NYC DOE to maintain T.T's 20 hours per week of 1:1 SETSS during the pendency of administrative proceedings. (*See generally id*.) The Court granted Plaintiff's request on August 27, 2018, obligating the NYC DOE to maintain T.T.'s 20 hours per week of 1:1 SETTS pursuant to the 2018 Agreement. (*See* 18-cv-04180, ECF No. 15 ("Pendency Order").) *Toth I* was terminated on March 27, 2019, accordingly.

On April 17, 2019—74 days before the beginning of the 2019–2020 school year—the NYC DOE announced that the AMAC would close due to bankruptcy. (*Toth III* Compl. ¶ 14.)

According to Plaintiff, the NYC DOE knew one or two years prior to T.T.'s 2015 placement at AMAC that the school would close in 2019. (*Id*. ¶ 58.) Plaintiff further alleges that the NYC DOE's untimely disclosure of AMAC's impending closure prevented T.T.'s parents from finding a suitable replacement school. (*Id*.) On June 3, 2019, T.T. was offered admission to the Keswell School ("Keswell"), provided that his parents pay the required deposit and fees. (*Id*. ¶ 62.) Keswell offered T.T. an educational program using a 1:1 model of ABA therapy combined with speech occupational therapy and peer interaction, which was consistent with the recommendation of T.T.'s developmental pediatrician. (*Id*. ¶¶ 60, 62.)

The NYC DOE's Central Based Support Team ("CBST") rejected T.T's placement at Keswell. (*Id*. ¶¶ 24, 63.) On June 7, 2019, the NYC DOE issued an IEP recommending placement in two 12-month special education programs: a 6:1+2 special class in a "NYSED-Approved Non Public School–Day" and a 6:1+1 special class in a "NYSED-Approved NPS–Day Interim D75." (June 11, 2019 Decl. Lana Koroleva ("Koroleva Decl.") ¶ 5, 19-cv-3403, ECF No. 9; Koroleva Decl., Ex. B ("June 2019 IEP") at 24, ECF No. 9-2). The June 7, 2019 IEP further recommended related services including three 30-minute sessions per week of individual occupational therapy, three 30-minute sessions per week of individual speech-language therapy, two 30-minute sessions per week of group speech-language therapy, and one 60-minute session per month of group parent counseling and training. (June 2019 IEP at 24.) According to Plaintiff, the June 7, 2019 IEP reduced the amount of speech therapy T.T. would receive and eliminated his 20 hours per week of 1:1 instruction. (*Toth III* Compl. ¶¶ 70–71.) Plaintiff alleges that the June 7, 2019 IEP places T.T. in a classroom setting in which he cannot progress. (*Id*. ¶ 69.)

On June 7, 2019, Plaintiff commenced the second federal action—*Toth II*. (*See Toth II* Compl., 19-cv-3403, ECF No. 1)  In *Toth II*, Plaintiff sought a TRO requiring the NYC DOE to approve T.T's placement and payment for Keswell. (*See id*. at 15.)  On June 14, 2019, the Court denied Plaintiff's request to the extent Plaintiff sought payment from the NYC DOE for the deposit and fees for Keswell. (*See* June 14, 2019 Minute Entry and Scheduling Order, 19-cv-3403.)  On or about June 14, 2019, the NYC DOE received a letter from the Quality Services for the Autism Community Serving New York City and Long Island ("QSAC"), a State-approved private school, advising that it agreed to accept T.T. as a student for the 2019–2020 school year. (Sept. 6, 2019 Decl. Esther Gutwein ("Gutwein Decl.") ¶ 2, 19-cv-3403, ECF No. 29.)  Plaintiff rejected QSAC's offer of admission. (*Id*. ¶ 3.)

On June 19, 2019, Plaintiff moved to reopen the case. (*See* 19-cv-3403, ECF No. 21.)  The Court construed Plaintiff's motion as a motion to reconsider its June 14, 2019 decision denying Plaintiff's request for a TRO. (*See* June 21, 2019 Order, 19-cv-3403.)  The Court denied the motion for reconsideration on June 21, 2019, due to Plaintiff's failure to identify an intervening change in controlling law, new evidence, or clear error or arguments concerning manifest injustice. (*Id*.)  The Court underscored:

> At most, for the purpose of pendency under the IDEA provisions set forth [in] 20 U.S.C. § 1415(j), the Court could only direct the placement of T.T. at a school consistent with his then-current educational placement or the status quo . . . .  In this case, the status quo is placement at a State-approved non-public school, coupled with the services set out in the February 9, 2018 stipulation of settlement. By letter dated June 14, 2019, the Department of Education has confirmed that it has made available to Mr. Toth at least one State-approved non-public school, the QSAC school, located in Queens, New York. That Mr. Toth finds the school inadequate because the principal of the school "made faces" when Plaintiff's parents visited some years ago and that the school is not located near Mr. Toth's work place in Manhattan, are not bases to deem the school inappropriate or otherwise inconsistent with the then-current educational placement of T.T. If Mr. Toth rejects QSAC (or any other State-approved non-public school made available by Department of Education), he is permitted to place his son at a private school of

5

>his choosing, pay the cost for private school, and seek reimbursement from the Department of Education pursuant to 20 U.S.C. § 1412(a)(10)(C)(ii). However, if Mr. Toth elects this option, he does so at his own financial risk.

(*Id*.) Plaintiff filed a second motion for reconsideration on June 26, 2019. (19-cv-3403, ECF No. 22.) On August 16, 2019, Plaintiff moved to vacate the Court's denial of his request for a TRO. (19-cv-3403, ECF No. 26.) Then, on September 3, 2019, Plaintiff moved for a preliminary injunction, seeking enforcement of the Court's August 27, 2018 pendency order issued in *Toth I*. (19-cv-3403, ECF No. 27.) Plaintiff moved for judgment as a matter of law two weeks later seeking "judgment on the merits of the . . . pendency claim [in *Toth II*]." (19-cv-3403, ECF No. 33.)

Plaintiff commenced the third federal action—*Toth III*—on July 1, 2019. (*See Toth III* Compl., 19-cv-3821, ECF No. 1.) In *Toth III*, Plaintiff seeks a declaration that the NYC DOE failed to provide T.T. with a FAPE for the 2019–2020 school year; an order requiring the NYC DOE to provide T.T. with 1:1 instruction for the 2019–2020 school year; compensatory education of at least 1000 hours of 1:1 instruction; money damages; and attorney's fees. (*Id*. ¶¶ 112, 116, 126, 133, 140.)

At some point, T.T.'s parents enrolled T.T. in a private school of their choice. (*See* Pl.'s Suppl. Opp'n Def.'s Mot. Dismiss ("Pl.'s Suppl."), Ex. A ("IHO Decision") at 7, 19-cv-3821, ECF No. 19-1.) On December 19, 2019, and January 7, 2020, Plaintiff filed due process complaints with the NYC DOE concerning T.T's placement during the 2019–2020 school year. (*See id*. at 2.) The NYC DOE consolidated Plaintiff's due process complaints with the ongoing proceeding regarding his complaints for the previous two school years. (*See id*. at 1–2.) During the consolidated proceeding, Plaintiff sought placement for T.T. at the Gersh Academy ("Gersh"); prospective tuition and costs; and compensatory education services. (*Id*. at 3.) In a

6

decision dated April 20, 2020, an Impartial Hearing Officer ("IHO"):  (1) declared that the NYC DOE failed to provide T.T. a FAPE for the 2017–2018, 2018–2019, and 2019–2020 school years; (2) awarded Plaintiff prospective tuition and costs for T.T.'s attendance at Gersh for the 2020–2021 school year; (3) ordered that T.T.'s placement include daily 1:1 speech and occupational therapy; (4) ordered the NYC DOE to provide round-trip transportation to Gersh; and (5) awarded 600 hours of compensatory education services (300 hours of 1:1 speech-language therapy ("SLT") services and 300 hours of 1:1 ABA services).  (*Id*. at 14, 16.)  The IHO declined to award reimbursement for Kumon tutoring hours.  (*Id*. at 15.)  T.T.'s parents appealed the IHO's failure to grant all of their requested relief.  (*See* Def.'s Resp. Pl.'s Suppl. ("Def.'s Resp."), Ex. A ("SRO Decision") 1, 19-cv-3821, ECF No. 22-1.)  The NYC DOE cross-appealed the IHO's award of prospective tuition at Gersh.  (*Id*.)  In a decision dated July 29, 2020, a State Review Officer ("SRO") dismissed the NYC DOE's appeal and sustained T.T's parents' appeal, in part, modifying the IHO's award to include 20 hours per week of 1:1 home-based ABA services for the 2020–2021 school year.  (*See id*. at 26.)

## DISCUSSION

### I.   Consolidation

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2).  A court need not await a motion from the parties but can "[act] *sua sponte*." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).  In determining whether consolidation is appropriate, "[t]he trial court has broad discretion." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  "In assessing whether consolidation is appropriate in given circumstances, a district court should consider both

equity and judicial economy." *Devlin*, 175 F.3d at 130. The "paramount" concern, however, is "for a fair and impartial trial." *Johnson*, 899 F.2d at 1285.

Here, Plaintiff brings suit against the same defendant in two actions complaining of substantially the same conduct—the NYC DOE's failure to provide T.T. a FAPE. Indeed, in both *Toth II* and *Toth III*, Plaintiff requests injunctive relief to remedy the NYC DOE's failure to provide T.T. with 1:1 instruction for the 2019–2020 school year. (*See Toth II* Compl. at 15; *Toth III* Compl. ¶¶ 112, 116, 126, 133, 140.) Further, Plaintiff brings both actions pursuant to the IDEA, resulting in common questions of law. (*See id.*) The Court can discern no prejudice to the NYC DOE resulting from consolidation. On balance, the Court finds that the interests of justice are best served by consolidation, as carrying the two remaining actions forward as one enhances judicial economy. *Toth II* and *Toth III* are, therefore, consolidated. *Toth III* (19-cv-3821) shall become the lead case.

## I.     The IDEA: Statutory Framework

The IDEA is a comprehensive statutory framework designed to aid states in providing disabled children a FAPE. *See* 20 U.S.C. § 1412(a)(I). The statute provides that "a [FAPE] is available to all children with disabilities . . . between the ages of 3 and 21." *Id*. § 1412(a)(1)(A). A FAPE means special education and related services that:

> (A) have been provided at public expense, under public supervision and direction, and without charge,
> (B) meet the standards of the State educational agency,
> (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

*Id*. §1401(9).

A FAPE is crafted collaboratively by the student's parents, teachers, and school district administrators and is recorded in an IEP. *See* 20 U.S.C. §1414(d)); *Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (The "core of the statute . . . is the cooperative process that [IDEA] establishes between parents and schools."). An IEP includes, among other things, a statement of the student's present levels of academic achievement and functional performance, measurable annual goals, and a statement of special education and related services. 20 U.S.C. § 1414(d). In creating an IEP, the appropriate state agency must "review existing evaluation data on the child, including . . . [e]valuations and information provided by the parents of the child." 20 U.S.C. § 1414(c)(1)(A)(i); *see also* 34 C.F.R. § 300.305 (a)(1)(i).

The IDEA provides numerous procedural safeguards to protect the due process rights of disabled children and their parents. *See generally* 20 U.S.C. § 1415. That said, "[i]t is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004). "The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes," such as the Rehabilitation Act and 42 U.S.C. § 1983, "when relief is also available under the IDEA." *Id.* (citing 20 U.S.C. § 1415(l) and observing that the Rehabilitation Act and 42 U.S.C. § 1983 claims "both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement"). "The purpose of the exhaustion rule is to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245–46 (2d Cir. 2008) (internal quotations omitted).

9

New York has implemented a two-tiered system of administrative review regarding challenges to a school system's provision of a FAPE. *Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 160 (2d Cir. 2004). Parents who believe that a school district has failed to provide their child a FAPE are first entitled to review of the IEP before an IHO appointed by the NYC DOE. *Id*. (citing 20 U.S.C. §§ 1415(f); N.Y. Educ. Law § 4404(1)). The parents can then appeal the IHO's decision to the Office of State Review and seek review of the IEP by an SRO. *Id*. (citing 20 U.S.C. § 1415(g)(1); N.Y. Educ. Law § 4404(2)). Only after receiving a decision from the SRO may the parents seek review in state or federal court. *Id*. (citing 20 U.S.C. § 1415 (i)(2)(A)).

The IDEA's pendency provision states that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in [his] then-current educational placement." 20 U.S.C. § 1415(j). This provision is "in effect, an automatic preliminary injunction[,]" which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). The Second Circuit has explained that the pendency provision "reflects Congress's decision that all disabled children should keep their existing educational program until any dispute over their placement is resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014) (citing *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61. A student's then-current educational placement has been understood to mean: "(1) typically the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked; and (3) the placement at the

10

time of the previously implemented IEP." *Mackey ex rel. Thomas M.*, 386 F.3d at 163 (internal quotations, citations, and alterations omitted).

## II.  Plaintiff's Second Motion for Reconsideration and Motion to Vacate

For a second time, Plaintiff moves for reconsideration of the Court's denial of his application for a TRO requiring the NYC DOE to approve T.T's placement at Keswell. (19-cv-3403, ECF No. 22-1.) "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *See Salveson v. JP Morgan Chase & Co.*, 663 F. App'x 71, 75 (2d Cir. 2016). For a second time, Plaintiff fails to identify an intervening change in controlling law, new evidence, or clear error or arguments concerning manifest injustice requiring reconsideration. (*See generally* Pl.'s Sec. Mot. Recon., 19-cv-3403, ECF No. 22-1.) Plaintiff argues that the NYC DOE and this Court "omitted to address the issue of learning." (*Id*. at 12.) Plaintiff points to purported evidence of T.T's inability to learn, including evaluations by Dr. Katherine Hopkins and Dr. Wilfred G. von Gorp. (*Id*. at 16.) This evidence was before the Court on Plaintiff's first motion for reconsideration. Indeed, his second motion is nearly identical to his first, which was already denied. Accordingly, Plaintiff's second motion for reconsideration is denied.

Plaintiff also moves to vacate this Court's order denying his request for a TRO. (19-cv-3403, ECF No. 26.) Plaintiff does not identify a legal basis for such a motion. Nevertheless, it is obvious from his submission that Plaintiff's "motion to vacate" is simply a poorly veiled third motion for reconsideration. The third time is not a charm. Plaintiff raises three points. *First*, according to Plaintiff, on June 12, 2019, the NYC DOE misrepresented that it served T.T. an IEP at 7:44 p.m. on the evening before the hearing on Plaintiff's request for a TRO when it in fact had not issued a timely IEP for three years. (*Id*.) He maintains further that the IEP served on

11

June 12 was an unsigned, incomplete draft "generated for the purposes of litigation." (*Id.*) *Second*, Plaintiff argues that by failing to provide reasonable notice of AMAC's closure and by filing a list of replacement schools "minutes before" the June 14, 2019 hearing, the NYC DOE denied T.T.'s parents a reasonable opportunity to participate in the selection of a replacement school. (*Id.*) *Third*, Plaintiff maintains that the NYC DOE made an unfounded representation at the June 14 hearing as to how the NYC DOE intended to proceed with T.T.'s placement. (*Id.*)

The Court is at a loss as to how any of these contentions—even if true—provide grounds to disturb the Court's prior determination. Indeed, none of the facts bear any relation to the basis for the Court's ruling. The Court denied Plaintiff's request for a TRO to the extent Plaintiff sought to require the NYC DOE to pay the deposit and fees for Keswell—the particular school that Plaintiff wanted T.T. to attend. (*See* June 14, 2019 Minute Entry and Scheduling Order, 19-cv-3403.) At the hearing, the Court made clear that it was denying this request because the NYC DOE is not legally required to place T.T. at a school of Plaintiff's choosing, but rather it is obligated only to provide substantially the same curriculum and services. (*See* June 14, 2019 Hr'ng Tr. ("Tr.") 16:3–24; 23:4–13, 19-cv-3403, ECF No. 43.) The Court did not deny Plaintiff's motion based on any representation about the timeliness of any IEP or about what the NYC DOE would do in the future. (*See generally* Tr.) Plaintiff's argument that he was denied a reasonable opportunity to participate in the selection of a replacement school because the NYC DOE filed a list of schools "minutes before" the hearing is simply untrue. At the hearing, the Court made it abundantly clear, both in substance and sheer repetition, that Plaintiff was under no obligation to select a replacement at that very moment and would be afforded an opportunity to consider the options available to him. (Tr. 8:20–21; 14:19–15:2.) Plaintiff's motion to vacate is denied.

12

### III. Plaintiff's Motion for a Preliminary Injunction

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (per curiam) (internal quotations and citation omitted). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

Here, Plaintiff moves for a preliminary injunction to "enforce the pendency order of August 27, 2018." (*See* Pl.'s Mot. Prelim. Inj., 1, 19-cv-3403, ECF No. 27.) Specifically, he requests an order directing "the [NYC DOE], before the first day of school on September 5, 2019, [to] provide [placement at] either of the two schools which have accepted T.T., door-to-door transportation, and 200 hours of compensatory education for the omission to provide a school from July 30, 2019 until the present." (*Id*.) The NYC DOE argues that Plaintiff's motion lacks merit because Plaintiff fails to demonstrate that T.T. was ever denied pendency placement. (Def.'s Opp'n Pl.'s Mot. Prelim. Inj. ("Def.'s Opp'n") 8–10, 19-cv-3403, ECF No. 28.) The Court agrees.

According to Plaintiff, the NYC DOE did not provide T.T. with pendency placement for the 2019–2020 school year because the two schools initially offered by the NYC DOE—QSAC and the Association for the Help of Retarded Children ("AHRC")—were not made available to T.T. (Pl.'s Mot. Prelim. Inj. 5.) Specifically, Plaintiff maintains that QSAC never offered T.T. admission and the NYC DOE did not take any action to enroll T.T. at AHRC following the AHRC's offer of admission. (*Id*.) Not so. On June 14, 2019, QSAC extended an offer to accept

13

T.T. as a student. (Gutwein Decl., Ex. A, ECF No. 21-1.) However, Plaintiff advised the NYC DOE and this Court that he was rejecting the proposed placement at QSAC. (Gutwein Decl. ¶ 3, ECF No. 21.) Because Plaintiff did not accept a placement at QSAC when it was available, T.T.'s seat became unavailable (presumably because it was filled by another student). (*Id.* ¶ 5.) And, while AHRC offered T.T. admission, the NYC DOE learned that AHRC was unable to provide T.T. the educational program recommended in the June 7, 2019 IEP. (*Id.* ¶ 4.)

Against these facts, there is no basis to grant injunctive relief. Indeed, Plaintiff, a trained lawyer, fails altogether to make any argument that he has a substantial likelihood of success on the merits, that T.T. will suffer irreparable harm absent a preliminary injunction, or that a preliminary injunction is in the public interest. (*See generally* Pl.'s Mot. Prelim. Inj.) Instead, Plaintiff's submission amounts to little more than a restatement of the facts alleged in *Toth I* and *Toth II*, conclusory statements, and legal quotes untethered to argument.[2] (*See generally* Pl.'s Mot. Prelim. Inj.) Plaintiff's motion for a preliminary injunction is denied.

### IV. Plaintiff's Motion for Judgment as a Matter of Law

Plaintiff purports to move for judgment as a matter of law seeking "judgment on the merits of the . . . pendency claim [in *Toth II*]." (Pl.'s Mot. J. L. 4, 19-cv-3403, ECF No. 33.) Plaintiff's motion is improper. Motions for judgment as a matter of law may only be granted

---

[2] Plaintiff's only attempt at demonstrating that he meets the standard for a preliminary injunction is his declaration that "[a] cessation of a handicapped child's schooling and the accompanying loss of educational, vocational and social development constitutes irreparable injury." (Pl.'s Mot. Prelim. Inj. 8.) Plaintiff cites *Ross v. Disare*, 500 F. Supp. 928 (S.D.N.Y. 1977) for this proposition. Without more, this proposition is unhelpful, as Plaintiff does not demonstrate how this rule of law applies to T.T.'s case. (*See generally* Pl.'s Mot. Prelim. Inj.) Nonetheless, *Ross v. Disare* is inapposite. In *Ross*, minority students sought an injunction to enjoin their school district from imposing discipline on a racially discriminatory basis and employing procedures in school suspension hearings violative of due process. *See Ross v. Disare*, 500 F. Supp. 928, 931 (S.D.N.Y. 1977). In reference to violations of § 3214 of the New York Education Law requiring, *inter alia*, that a suspended student be afforded due process, the court noted that "interruption of a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury." *Id.* at 934.

"[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). There has been no trial in this matter. Plaintiff's motion for judgment as a matter of law is denied.

**V.      Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists. *Id.* "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiffs.'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S.*, 386 F.3d at110). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

The NYC DOE initially argued for dismissal of the complaint in *Toth III* on the basis that Plaintiff failed to exhaust his administrative remedies. (*See* Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem."), 19-cv-3821, ECF No. 15.) When Plaintiff commenced *Toth III* on July 1, 2019, Plaintiff had not filed a due process complaint challenging the June 7, 2019 IEP. Circumstances have since changed. On December 19, 2019, and January 7, 2020, Plaintiff filed administrative due process complaints concerning T.T's placement during the 2019–2020 school year. (*See* IHO Decision at 2.) Both parties appealed the IHO's decision, and an SRO dismissed the NYC DOE's appeal and sustained T.T.'s parents' appeal, in part. (SRO Decision at 26.) The

15

NYC DOE concedes that, given these factual developments, Plaintiff has now exhausted his administrative remedies with respect to his claim that the NYC DOE failed to provide T.T. a FAPE for the 2019–2020 school year.  (*See* Def.'s Resp. 2.)

In a supplemental submission, the NYC DOE argues that Plaintiff's claims have been rendered moot by the issuance of a final decision in Plaintiff's favor in the underlying administrative proceeding and that no exception to the mootness doctrine applies.  (*Id*. 3.)  According to the NYC DOE, the SRO Decision provides Plaintiff all the relief he seeks in *Toth III*, with the exception of monetary damages and attorney's fees.  (*Id*.)

"A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur."  *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998).  In *Toth III*, Plaintiff seeks a declaration that the NYC DOE failed to provide T.T. with a FAPE for the 2019–2020 school year; an order requiring the NYC DOE to provide T.T. with 1:1 instruction for the 2019–2020 school year; and compensatory education of at least 1000 hours of 1:1 instruction.  (*Id*. ¶¶ 112, 116, 126, 133, 140.)  In a decision dated April 20, 2020, the IHO granted Plaintiff the declaration and issued an order requiring that T.T.'s placement include daily 1:1 speech and occupational therapy.  (IHO Decision at 14, 16.)  To the extent that *Toth III* is premised upon that relief, the complaint is moot. *See F.O. v. New York City Dep't of Educ.*, 899 F. Supp. 2d 251, 254 (S.D.N.Y. 2012) ("[T]he relief that Plaintiffs sought in this matter, having the DOE provide a paraprofessional during the 2010–2011 school year, has been provided; the school year is over and DOE . . . provided the paraprofessional.  Plaintiffs' claim is therefore moot.").  That said, the NYC DOE's contention that Plaintiff received all of the relief he seeks in *Toth III* is demonstrably false—as Plaintiff only received 600 of the 1000 hours of compensatory education

16

services he requests in *Toth III*.³  (IHO Decision at 14, 16.)  While the case may be significantly narrowed by the IHO decision, the Court cannot declare the action moot as the NYC DOE urges. Accordingly, Defendant's motion to dismiss for lack of subject-matter jurisdiction is denied.

## CONCLUSION

For the reasons stated above, *Toth II* and *Toth III* are consolidated.  *Toth III* (19-cv-3821) shall be deemed the lead case.  Plaintiff's second motion for reconsideration, motion to vacate, motion for a preliminary injunction, and motion for judgment as a matter of law are each DENIED.  Defendant's motion to dismiss for lack of subject-matter jurisdiction is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
       February 10, 2021  LaSHANN DeARCY HALL
                                                                    United States District Judge

---

³ Plaintiff seeks monetary damages pursuant to § 1983 and attorney's fees. (*Toth III* Compl. ¶¶ 133, 140.) This relief was not granted in the SRO Decision. This is of no consequence. Plaintiff is not entitled to either form of relief as a matter of law. That is, Plaintiff "may not rely on § 1983 to pursue monetary damages for violations of the IDEA[]" where no denial of procedural safeguards is alleged. *Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008); *see also Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) ("[M]onetary damages are available in claims brought pursuant to 42 U.S.C. § 1983 for denial of access to administrative remedies under the IDEA . . . ."). And, "a parent-attorney is not entitled to attorneys' fees under the IDEA for the representation of his or her own child." *S.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 605 (2d Cir. 2006).